O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| CAROL J. TUCKER, | ) | Case No. EDCV 06-00260-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Carol Tucker seeks judicial review of the Commissioner's final decision denying her application for Social Security Disability Insurance benefits. For the reasons set forth below, the Commissioner's decision is affirmed.

I.  **Background**

Plaintiff filed an application for Social Security Disability Insurance benefits on December 3, 2003. (Administrative Record "AR" at

73).   Plaintiff alleged that she had been disabled and unable to work since February 28, 2002,[1] due to chronic fatigue, fibromyalgia, and depression.  (AR at 73, 80-81).

Plaintiff was born March 3, 1955 and was 49 at the time of the administrative hearing. (AR at 73).  She has one year of college education. (AR at 85).  She has also earned certificates in data processing and office and computer skills. (AR at 85).  She has worked as a clerk, secretary, and vault cashier. (AR at 81-2).

Plaintiff's application was denied initially and upon reconsideration.  (AR at 51, 57).  A hearing was held on February 2, 2005, before Administrative Law Judge ("ALJ") Peter J. Baum.  (AR at 35-48).  Plaintiff, represented by counsel, testified. (AR at 39-47).  The ALJ found that Plaintiff suffered from obesity and hypertension, and that the disability insured status requirements of the Social Security Act were met through the date of the decision.  (AR at 26).  However, the ALJ found that Plaintiff did not have any impairment or combination of impairments which are "severe" within the meaning of the Social Security Act. (Id.); see 20 C.F.R. §§ 404.1520, 404.1521.  Additionally, the ALJ found Plaintiff's subjective symptom testimony "unsupported by any evidence of an impairment or combination of impairments capable of causing such symptoms." (Id.).  Specifically, the ALJ found that the objective medical evidence, Plaintiff's daily activities, the long gaps between medical treatment, the conservative and limited nature of that medical treatment, and the absence of any regular prescription for narcotic pain medication did not support Plaintiff's claim of disability. (Id.).  On May 12, 2005, the ALJ denied Plaintiff's

---

[1]  Plaintiff amended her alleged disability onset date to December 1, 2002 at the administrative hearing.  (AR at 38).

application for disability benefits. (AR at 21).

On February 13, 2006 the Appeals council denied Plaintiff's request for review. (AR at 8).  Plaintiff then commenced this action for judicial review.

On October 27, 2006, the parties filed a joint stipulation ("JS") of disputed facts and issues.  Plaintiff contends that: (1) the ALJ failed to give appropriate weight to the opinion of Plaintiff's treating physician; (2) the ALJ failed to properly evaluate Plaintiff's subjective symptoms and credibility; and (3) the Appeals Council failed to consider new material evidence which was unavailable at the time of Plaintiff's hearing. (JS at 3).  Plaintiff seeks remand for an award of benefits or an order from this Court awarding benefits. (JS at 22).  In the alternative, Plaintiff seeks remand for a new hearing considering all of the medical evidence, including a proper evaluation of the assessments of Plaintiff's treating physician, and a proper evaluation of Plaintiff's credibility and subjective symptom testimony in accordance with Social Security Ruling ("SSR") 96-7p. (JS at 22).  Defendant requests that the final decision of the Commissioner be affirmed and Plaintiff's action be dismissed with prejudice. (JS at 23).

## II.   **Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision denying benefits.  The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001).

3

Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla , but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-21.

## III. <u>Discussion</u>

### A.   <u>The ALJ Did Not Err in Rejecting the Opinion of Plaintiff's Treating Physician</u>

Plaintiff claims that the ALJ erred in rejecting the opinion of her treating physician, Dr. Lee. (JS at 3-4, 8-13). Specifically, Plaintiff contends that the ALJ failed to give Dr. Lee's fibromyalgia diagnosis the deference it required, and that the ALJ's reasons for rejecting Dr. Lee's opinion are not supported by substantial evidence in the record. (Id.). This Court disagrees, and thus finds Plaintiff's claim without merit.

If the opinion of a treating physician is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Id.* Nevertheless, "[t]he ALJ need not accept the opinion of any physician, including a treating physician,

1   if that opinion is brief, conclusory, and inadequately supported by
2   clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.
3   2002).

4       Dr. Lee first diagnosed Plaintiff with fibromyalgia on December 10,
5   2002. (AR at 145). The progress notes from that appointment indicate
6   that the reason for Plaintiff's visit was cough and congestion, and
7   while still "somewhat depressed," Plaintiff had no other complaints that
8   day. (AR at 145). From October 2003 through October 2004, Dr. Lee
9   continued to diagnose Plaintiff as suffering from fibromyalgia (AR at
10  245-9), and ultimately concluded that Plaintiff was unable to perform
11  "any kind" of work. (AR at 116). The ALJ rejected Dr. Lee's opinion as
12  unsupported by objective medical evidence. (AR at 22).

13      Although there are no laboratory tests which establish the presence
14  or severity of fibromyalgia, it is recognized as a medically
15  determinable impairment under the Social Security Act if there are signs
16  that are clinically established by the medical record. *See* Social
17  Security Administration Memorandum, Fibromyalgia, Chronic Fatigue
18  Syndrome, and Objective Medical Evidence Requirements for Disability
19  Adjudication, (May 11, 1998); Social Security Ruling ("SSR") 99-2p; *see*
20  *also Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). The signs are
21  primarily tender points, and the American College of Rheumatology
22  defines the disorder in patients as "widespread pain in all four
23  quadrants of the body for a minimum duration of 3 months and at least 11
24  of the 18 specified tender points which cluster around the neck and
25  shoulder, chest, hip, knee, and elbow regions." Social Security
26  Administration Memorandum, Fibromyalgia, Chronic Fatigue Syndrome, and
27  Objective Medical Evidence Requirements for Disability Adjudication,
28  (May 11, 1998); *see also* SSR 99-2p, n.3; *Sarchet*, 78 F.3d at 306.

5

In his decision, the ALJ noted the absence of any severe deformity, continued range of motion loss, persistent swelling or joint inflamation, "or other evidence to support a finding of any marked impairment of function in ambulation, manipulative ability, or overall ability." (AR at 22). Indeed, the record reveals that an exam by Dr. Lee of Plaintiff's right shoulder in September 2002 showed no evidence of any bone abnormalities, fracture, or any dislocation. (AR at 181). An exam of Plaintiff's left knee in June 2003 showed a possible small suprapatellar joint effusion and mild spurring of the intercondylar tibial spines, but no other abnormalities. (AR at 179).

More significantly, although Dr. Lee did note that Plaintiff exhibited tender points, he did not record the exact number. (AR at 116). The ALJ also pointed out that while Dr. Putnoky, a rheumatologist who evaluated Plaintiff for a second opinion, assessed Plaintiff as "likely" suffering from fibromyalgia in December 2002, she failed to test positive for 11 of 18 tender points. (AR at 22, 143). The ALJ also correctly observed that there is no evidence in the record of rheumatological follow-up and additional tender point findings. (AR at 22).

In rejecting Dr. Lee's opinion, the ALJ also found that while the Plaintiff complained of suffering from symptoms of fibromyalgia, namely headaches and fatigue, there is no evidence that Plaintiff was ever in acute distress. (AR at 22-23). Furthermore, at every appointment from October 2003 through October 2004, Dr. Lee noted that Plaintiff denied having headaches. (AR at 245, 246, 249). Dr. Lee did note that Plaintiff complained of feeling fatigued while engaging in minimal activities, but there is no information in the record concerning how long her fatigue lasted or what she did to recover. (AR at 116).

Moreover, Dr. Lee recommended regular exercise as part of Plaintiff's treatment (AR at 249), which further undermines his opinion that Plaintiff is unable to perform "any kind" of job.

The ALJ also relied on the opinions of state agency medical consultants who reviewed Plaintiff's medical history and concluded that she has no medically determinable impairment. (AR at 23). Dr. Taylor-Holmes noted Plaintiff's complaints of neck and mid-back pain, as well as past evaluations by Dr. Lee which showed tenderness of neck, shoulders, and back. (AR at 227). However, as a result of Plaintiff testing positive for only 9 out of 18 trigger points, and because Dr. Lee's notes did not reveal any ongoing trigger points or any discussion of fatigue issues, Dr. Taylor-Holmes found Plaintiff could not establish fibromyalgia or chronic fatigue syndrome under the Social Security regulations. (Id.). It was not improper for the ALJ to rely, in part, on the findings Dr. Taylor-Holmes. *See* SSR 96-6p (1996) (findings of fact made by state agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources); 20 CFR § 416.927(f) (although not bound by their opinions, the ALJ must consider the evaluations made by state agency medical consultants because they are highly qualified experts in their field); *Morgan v. Comm'r*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ may reject the opinion of a treating or examining physician, based in part on the testimony of a non-treating, non-examining medical advisor).

Finally, the ALJ also pointed out that medical records show that Dr. Lee has responded to Plaintiff's complaints with limited and conservative treatment, and that such treatment "is inconsistent with

7

1  the medical response that would be expected if the claimant were limited

2  to the extent indicated by Dr. Lee." (AR at 23). Moreover, the ALJ

3  found that the frequent four-to-five month gaps in Plaintiff's medical

4  treatment did not support Dr. Lee's opinion that Plaintiff's condition

5  was severe. (Id.).

6      Generally, failure to seek regular medical attention, and

7  conservative treatment of alleged disability, are the type of "clear and

8  convincing" reasons the ALJ may properly cite in dismissing the opinion

9  of a treating physician. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir.

10 1999) (stating that the "ALJ properly considered [treating physicians]'s

11 failure to prescribe ... any serious treatment for this supposedly

12 excruciating pain" in rejecting Plaintiff's complaints of pain); *Johnson*

13 *v. Shala*, 60 F.3d 1428, 1434 (9th Cir. 1995). However, it is clear that

14 over the course of Dr. Lee's treatment, Plaintiff was prescribed

15 Notriplin and Wellbutrin for depression, and Naproxen and Hydroco/apap

16 5 to help "make pain bearable." (AR at 84, 121). *See Merck Manual of*

17 *Diagnosis and Therapy* (Sec. 5, Musculoskeletal and Connective Tissue

18 Disorders, Chapter 59 Nonarticular Rheumatism) (fibromyalgia

19 characterized by achy pain, tenderness, and stiffness of muscles, and

20 symptoms include anxiety or depression). Dr. Lee also recommended that

21 Plaintiff lose weight and exercise regularly. (AR at 246, 245, 249). It

22 is not clear that Dr. Lee could or should have prescribed a more

23 aggressive treatment program. *See Id.* (relief from fibromyalgia may be

24 obtained by stretching or aerobic exercises, improved sleep, local

25 applications of heat, gentle message, and low-dose tricylic anti-

26 antidepressants). However, even if Plaintiff's conservative medical

27 treatment is not a "clear and convincing" reason to reject the opinion

28 of Dr. Lee, the ALJ's decision is otherwise amply supported by the

8

record.   For all of the reasons stated above, Dr. Lee's opinion was "brief, conclusory, and inadequately supported by clinical findings," and thus, the ALJ did not err in rejecting it.


B.    **The ALJ Properly Evaluated Plaintiff's Testimony**

Plaintiff asserts that the ALJ erred in failing to properly evaluate her subjective symptoms and credibility.  (JS at 14). For the reasons stated below, the Court rejects Plaintiff's contention.

At the administrative hearing, Plaintiff testified that she sleeps "very poorly" and has "severe pain." (AR at 40).  She further testified that normally the first thing she does in the morning is "to take a couple of Vicodin to get [her]self going" which has a tendency to make her "very dizzy and very disoriented." (Id.).   In fact, Plaintiff stopped driving approximately 18 months before the hearing because she was having "dizzy spells." (AR at 41).  According to Plaintiff, she has "a very hard time focusing on any particular job" and has memory problems.  (Id.).  Moreover, Plaintiff described a typical day as follows: "I probably spend a minimum of 10 hours a day laying on the couch.  I get up in the morning after I've taken my Vicodin, I get up in the morning, I get myself dressed.  By the time I'm dressed I have to lay down because I'm just so tired I can't hardly move." (AR at 46).

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-step analysis.  At the first step, the claimant must produce objective medical evidence of one or more impairments, and show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).  The claimant is not

9

1  required to produce objective medical evidence of the symptom itself or
2  the severity of the symptom. *Id.* at 1282 (citing *Bunnell v. Sullivan*,
3  947 F.2d 341 (9th Cir. 1991) (en banc)).   At the second step of the
4  analysis,  the  ALJ  must  assess  the  credibility  of  the  claimant's
5  testimony regarding the severity of his symptoms.   If there is no
6  affirmative evidence of malingering, the ALJ may reject the claimant's
7  testimony only if the ALJ makes specific findings giving clear and
8  convincing reasons for the rejection, including which testimony is not
9  credible and what facts in the record lead to that conclusion. *Id.* at
10 1284 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

11      As discussed above, the ALJ's finding that Plaintiff does not
12 suffer from any medically determinable physical impairment is supported
13 by substantial evidence in the record.   Thus, Plaintiff has failed to
14 satisfy her burden of presenting objective medical evidence that she
15 suffers  from  fibromyalgia,  and  that  such  a  condition  produced  the
16 symptoms she describes.   *See* SSR 96-7p (if there is no medically
17 determinable impairment, the symptoms cannot be found to affect the
18 individual's ability to do basic work activities).

19      However, even assuming Plaintiff could establish that she has
20 fibromyalgia, the ALJ's reasons for rejecting her subjective symptom
21 testimony and credibility are well supported by the record.   First, the
22 ALJ correctly found that the objective medical evidence did not support
23 Plaintiff's statements regarding the intensity and frequency of her
24 pain.   As already explained, Plaintiff's treatment records do not show
25 that she has the requisite number of tender points to establish
26 fibromyalgia. (AR at 227).   Medical records also show that, during two
27 years of treatment, Dr. Lee never found Plaintiff to be acute distress.
28 (AR at 133-160).   Moreover, between October 2003 and October 2004,

Plaintiff consistently denied having any headaches or dizziness. (AR at 245, 246, 249). The lack of medical evidence supporting Plaintiff's claim is one factor the ALJ may appropriately consider when evaluating credibility. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ also reasonably relied on the Daily Activity Questionnaire and Adult Function Report submitted by Plaintiff and her daughter. (AR at 92-100, 109-114). Notwithstanding the physical limitations described by Plaintiff at the administrative hearing, the Function Report and Activity Questionnaire reveal that Plaintiff was able to perform tasks which undermine her claim that she is unable to perform any basic work-related activities, including: showering, cooking, caring for her husband, washing dishes, caring for her pets, clearing the table, shopping, sewing, reading, crocheting or knitting, putting together puzzles, swimming, talking on the phone, sweeping, doing laundry, dressing herself, managing finances, watching television and recalling most of what she sees, grooming herself and taking care of personal needs with limited or no assistance and without reminders, taking medication without reminders, ability to go places without reminders, getting along with friends, family, neighbors, and others, no difficulty following written instructions such as a recipe, no difficulty following oral instructions, and ability to leave her home for both personal needs and entertainment. (AR at 24, 92-100, 109-114). Plaintiff is correct that many home activities are not necessarily transferable to the work environment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, because the ALJ's conclusion that these activities adversely affect Plaintiff's credibility is a rational finding based on the record as a whole, this Court may not second-guess that conclusion. *See Burch*, 400 F.3d at 681; *see also Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir.

1999) (plaintiff's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of plaintiff's ability to work).

Thus, even if Plaintiff could establish that she suffered from a medically determinable impairment which was reasonably expected to produce the symptoms she alleges, the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

**C.   The Evidence Submitted After the ALJ's Decision Does Not Require Remand**

Plaintiff contends that the Appeals Council improperly failed to consider new and material evidence establishing Plaintiff's depression as a severe impairment. (JS at 20). On February 7, 2006, approximately nine months after the ALJ issued an unfavorable decision in this case, Plaintiff submitted progress notes from Preferred Behavioral Medical Group and Dr. Mark Stolar, dated June 23, 2005 through December 27, 2005. (AR at 6-7M). After their first meeting, Dr. Stolar diagnosed Plaintiff with "Major Depressive Disorder, recurrent, moderate." (AR at 7L). Dr. Stolar noted that Plaintiff's mental status exam was "within normal limits," except for "depressed mood, sad, and somewhat painful affect, complaints of memory impairment, occasional suicidal thoughts, tearfulness at times, occasional decreased eye contact, sitting on edge of the chair and being somewhat fidgety which looked like it was due to pain." (Id.). Dr. Stolar recommended that Plaintiff begin therapy, continue taking Effexor and Wellbutrin, and return in 4 weeks time. (Id.).

Dr. Stolar saw and evaluated Plaintiff again on July 21, 2005; August 18, 2005; September 15, 2005; October 11, 2005; December 6, 2005; and December 27, 2006. (AR at 7-7K). At each meeting, Dr. Stolar noted

12

1   that Plaintiff appeared depressed. (Id.). Dr. Stolar also consistently
2   found that Plaintiff did not suffer from any side effects from her
3   medications, that her alertness was intact, her thought process and
4   thought content normal, that there was no indication of perceptual
5   disturbances, and that Plaintiff denied feelings of dangerousness.
6   (Id.). During the course of Dr. Stolar's treatment, Plaintiff's dosage
7   of Effexor was increased twice (AR at 7K, 7I), and her dosage of
8   Wellbutrin was increased once. (AR at 7G). On December 6, 2005,
9   Plaintiff was prescribed Lexapro. (AR at 7C). The Appeals Council
10  reviewed Dr. Stolar's records and concluded that there was no basis to
11  disturb the ALJ's decision denying benefits. (AR at 5).

12      Pursuant to 20 CFR § 404.970(b), the Appeals Council is required to
13  consider new material evidence "if it relates to the period on or before
14  the date of the administrative law judge hearing decision [and if it]
15  finds that the administrative law judge's action, findings, or
16  conclusion is contrary to the weight of the evidence of record." *See*
17  *also Bates v. Sullivan*, 894 F.2d 1059, 1064 (9th Cir. 1990). To merit
18  remand, Plaintiff must show that the new evidence is material and that
19  she had good cause for failing to incorporate it into the record in the
20  prior proceedings. *See Allen v. Secretary of Health & Human Servs*., 726
21  F.2d 1470, 1473 (9th Cir. 1984). New evidence is material if (1) the
22  evidence bears "directly and substantially" on the matter in dispute;
23  and (2) that there is a "reasonable possibility" that the new evidence
24  would have changed the outcome of the administrative hearing. *See Mayes*
25  *v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001); *see also Booz v.*
26  *Secretary of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir.
27  1984)(new evidence is material if there is a reasonable possibility that
28  it would have changed the outcome of the ALJ's determination).

1    A review of the record reveals that Plaintiff's new evidence is not
2    material.  First, as Defendant correctly points out, Plaintiff fails to
3    provide any explanation as to how Dr. Stolar's diagnosis or treatment is
4    evidence that Plaintiff was limited in her capacity to work during the
5    period of time considered by the ALJ.   (See JS at 21).   The only
6    indication that Dr. Stolar's diagnosis relates to the period on or
7    before the ALJ's May 12, 2005 decision is Plaintiff's comment, in June
8    2005, that she believed her depression had "been going on for about 2
9    years."  (AR at 7L).

10   Second, the new evidence presented to the Appeal's Council does not
11   render the ALJ's findings contrary to the weight of the evidence in the
12   record.  The ALJ reviewed and discussed Plaintiff's claims of depression
13   in his decision.   (AR at 24).   The ALJ noted that Plaintiff had been
14   diagnosed with depression, and that her illness had been well-treated
15   with medication.  (AR at 24, 117).  After a psychiatric review conducted
16   January 14, 2004, Dr. Jenkins-Phelps concluded that Plaintiff did not
17   suffer from any medically determinable impairment.  (AR at 213).  On
18   February 5, 2004, Dr. Jones noted that Plaintiff was depressed due to
19   her physical condition and that she has been prescribed Wellbutrin. (AR
20   at 228).  Dr. Jones further observed that Plaintiff had no history of
21   psychiatric illness and had never been hospitalized for such a
22   condition.  (AR at 117, 228).  Dr. Jones went on to note that while
23   Plaintiff first complained of depression in October of 2002, depression
24   is not mentioned again in her medical history until March 2003, when she
25   admitted that she did not know whether or not she was depressed.  (Id.).
26   On February 5, 2004, Dr. Becraft examined Plaintiff and found no
27   ///
28   ///

medically determinable impairment with respect to mental illness. (AR at 229). No doctor, including Dr. Stolar, has concluded that Plaintiff has any type of mental impairment which would limit her ability to work.

Thus, given the evidence in the record, the Appeals Council did not err in concluding that Plaintiff's new evidence did not require remand. Dr. Stolar's progress notes are not material because there is no reasonable possibility that they would have changed the outcome of the ALJ's determination. Moreover, this Court notes that whether a claimant meets a Listing is a matter that is reserved to the Commissioner. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ carefully weighed all of the medical evidence in conjunction with Plaintiff's work history and past daily activities and found that Plaintiff was not disabled by her depression during the period at issue. This decision was supported by substantial evidence and Plaintiff's claim is without merit.

**V.   CONCLUSION**

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner be affirmed and this case be dismissed with prejudice.

DATED: December 11, 2006

_____
Marc L. Goldman
United States Magistrate Judge